United States District Court
District of Massachusetts

```
_____
                               )
UNITED STATES OF AMERICA        )
                                )
          v.                    )
                                )          Criminal Action No.
DONOVAN DIXON,                  )          15-10344-NMG
                                )
          Defendant.            )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

Defendant Donovan Dixon ("defendant" or "Dixon") challenges the validity of the indictment pending against him on the grounds that the deportation on which it is based was unfairly imposed.  He has therefore moved to dismiss the indictment and the government opposes that motion.

I.   **Background**

Dixon was born in Jamaica and first entered the United States as a Legal Permanent Resident in 1971 at the age of twelve.  Defendant has three adult children born in the United States, two of whom reside in Massachusetts and one of whom resides in Florida.

In the early 1980s defendant was convicted of several offenses in Massachusetts and New York state courts: 1) possession with intent to distribute a Class D controlled

substance (marijuana), for which he received a sentence of probation (1980); mutilating a firearm serial number and unlawfully carrying a firearm, for which he was sentenced to serve one year in the Billerica House of Correction (sentence imposed in 1982 and reimposed in 1988); possession of a controlled substance (marijuana) with intent to distribute, for which he was sentenced to serve 6 months concurrent with the sentence for the firearms offenses (complaint received in 1982, sentenced imposed 1988); and criminal sale of a controlled substance (cocaine), for which he was sentenced to serve five years in a New York state facility (1983).

Upon defendant's first conviction in 1980, he was informed that he was subject to deportation under Section 241(a)(11) of the Immigration and Nationality Act ("the Act") and was placed in immigration removal proceedings.  After defendant failed to appear before an Immigration Judge for his initial removal hearing on December 11, 1980, the Immigration and Naturalization Service ("INS") administratively closed his case.

On April 27, 1989 the INS encountered Dixon at the Middlesex County House of Correction in Billerica, Massachusetts where he was serving his concurrent state sentences from his 1982 convictions.  On August 2, 1989 Dixon's attorney filed with the INS an Application for Advance Permission to Return to Unrelinquished Domicile pursuant to Section 212(c) of the Act.

Accompanying the application Dixon's attorney filed only two short letters of support but did not file defendant's tax returns or a country conditions report about Jamaica, which, according to defendant, was besieged with politically motivated violence around that time.

The INS subsequently added an additional charge of deportability to its petition for deportation based on defendant's conviction for possession of a controlled substance (marijuana) with intent to distribute (apparently the offense for which he was sentenced in 1988). On May 3, 1990 defendant and his attorney appeared at a deportation hearing, where the Immigration Judge denied defendant's Section 212(c) Application and ordered Dixon to be deported to Jamaica pursuant to Sections 241(a)(11) and 241(a)(4)(B) of the Act. At the hearing, the Immigration Judge read the deportation order and informed Dixon that "if you file an appeal, the notice is due by May 14, 1990." The Immigration Judge then asked defendant's attorney whether defendant reserved his right to appeal, which the attorney answered affirmatively. No notice of appeal was filed in the case. Dixon was deported on June 1, 1990.

Defendant returned to the United States at an unknown date. Immigration and Customs Enforcement ("ICE", formerly INS) again encountered Dixon on October 13, 2015 at the Bristol County House of Correction in North Dartmouth, Massachusetts, where he

was being held on state charges of witness intimidation and
being a fugitive from justice.  On November 12, 2015, a federal
grand jury returned an indictment charging Dixon with one count
of illegal reentry after deportation, in violation of 8 U.S.C.
§§ 1326(a) and (b)(2).

## II.  **Motion to Dismiss the Indictment**

Title 8 U.S.C. § 1326(d) permits an alien to mount a
collateral attack against a prior deportation order under
certain, limited circumstances.  In order to succeed, the alien
must demonstrate that

> (1) the alien exhausted any administrative remedies
> that may have been available to seek relief against
> the order; (2) the deportation proceedings at which
> the order was issued improperly deprived the alien of
> the opportunity for judicial review; and (3) the entry
> of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

Dixon claims that he was improperly deprived of judicial
review, rendering the deportation order fundamentally unfair,
because 1) the Immigration Judge failed to advise him of his
appellate rights, 2) his attorney failed to advise him of his
appellate rights and failed to appeal the deportation order
despite reserving the right to do so and 3) his attorney failed
to file a political asylum application for relief from
deportation.  Defendant further avers that because his failure
to exhaust his administrative remedies is the result of a due

4

process violation, the first prong of the statutory test should be waived. See United States v. Boliero, 923 F. Supp. 2d 319, 327 (D. Mass. 2013).

Dixon's first contention, that the Immigration Judge failed to advise him of his right to appear, finds no factual support in the record.  Defendant admits that, at his removal hearing, the Immigration Judge advised him that if he wanted to appeal he had to do so on or before May 14, 1990.  The Immigration Judge then proceeded to question Dixon's attorney about whether defendant reserved his right to appeal.  Accordingly, defendant's contention that he did not receive notice of his right to appeal is unpersuasive. See id. at 328.

Defendant's other claims fall under a theory of ineffective assistance of counsel.  Although the First Circuit Court of Appeals has not decided whether ineffective assistance of counsel is a sufficient basis to establish deprivation of the opportunity for judicial review under 8 U.S.C. § 1326(d)(2), the Second Circuit Court of Appeals has held in the affirmative on that question. United States v. Perez, 330 F.3d 97, 101 (2d Cir. 2003).  Because immigration proceedings are civil in nature and therefore the Sixth Amendment right to assistance of counsel does not apply, a defendant must show that his counsel's performance was so ineffective as to impinge upon the fundamental fairness of the hearing in violation of the Fifth

Amendment's Due Process Clause. Id.  To demonstrate fundamental unfairness, an alien must

> allege facts sufficient to show 1) that competent
> counsel would have acted otherwise, and 2) that he was
> prejudiced by his counsel's performance.

Id. (quoting Raibu v. Immigration & Naturalization Serv., 41 F.3d 879, 883 (2d Cir. 1994)) (internal quotations omitted).  A showing of prejudice requires

> a reasonable likelihood that the result would have
> been different if the error in the deportation
> proceeding had not occurred.

United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997). In ineffective assistance of counsel cases, the same standard applies for determining whether the entry of the deportation order was fundamentally unfair under 8 U.S.C. § 1326(d)(3).

The Court need not rule on whether defendant exhausted his administrative remedies under § 1326(d)(1) or whether competent counsel would have performed differently in representing him under §§ 1326(d)(2) and (3).  Defendant has failed to provide sufficient evidence that he suffered prejudice as a result of any deficient performance of his attorney and, accordingly, his motion will be denied.

Dixon first asserts that he had a reasonable likelihood of succeeding on a political asylum claim had his attorney filed such an application.  An applicant for political asylum may avoid removal by showing that, because of a protected

6

characteristic, he either (1) has been subject to past persecution, (2) has a well-founded fear of persecution or (3) has established a clear probability of prosecution. Id. §§ 1158(b)(1) and 1231(b)(3)(A); Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478 (1992); Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).  Protected characteristics include race, religion, nationality, membership in a particular social group and political opinion. 8 U.S.C. § 1101(a)(42)(A).

Defendant claims that he could have established a well-founded fear of returning to Jamaica because of "rampant politically motivated violence" and because of his father's involvement in Jamaican local politics.  He provides, however, no further details as to why he would reasonably fear persecution, how he would be linked to his father's activities, what his father's activities or political opinions were, how those opinions may have invoked persecution or whether he had been subject to persecution in the past.  Accordingly, Dixon has not provided the Court with sufficient evidence for the Court to conclude that he had a reasonable likelihood of succeeding in obtaining asylum had his attorney filed an asylum application on his behalf.

Second, Dixon contends that he had a reasonable likelihood of success had his attorney filed a direct appeal of his deportation order.  He cites several mitigating factors that

7

courts may consider when evaluating Section 212(c) Applications, which are discretionary waivers of deportation and compares his case favorably to that of Boliero, 923 F. Supp. 2d at 332-33. Dixon's attorney had, however, on his behalf, filed a Section 212(c) Application which was rejected by the Immigration Judge at the deportation hearing.

Defendant's argument is not that he was prejudiced because his attorney failed to file a Section 212(c) application but rather that he was prejudiced by his attorney's failure to file a direct appeal of the deportation order. Defendant has presented no reasons why he would have been reasonably likely to succeed in his direct appeal of the Immigration Judge's findings that he was deportable under § 212(a)(6)(A)(i) of the Act as an alien present in the United States without being admitted or paroled, and under § 212(a)(9)(A)(ii) of the Act as an alien who had been ordered removed or who had departed the United States while an order of removal was outstanding and who had been convicted of an aggravated felony. Consequently, he has not shown a reasonable likelihood that he would have succeeded in a direct appeal had his attorney filed one.

Moreover, even if the Section 212(c) Application factors are considered, Dixon still has failed to show that he had a reasonable likelihood of success on his appeal. While another session of this Court has noted that "[a] criminal history does

8

not automatically bar relief," Boliero, 923 F. Supp. 2d at 332, before his deportation defendant accumulated an extensive criminal history including multiple drug convictions and a weapons conviction.  That history is not outweighed by the positive mitigating factors discussed by the Boliero Court. See id. at 333.

    As in Boliero, defendant was a lawful permanent resident before his deportation. Id. at 333.  While he was not convicted of additional crimes during the period between 1983 and his deportation in 1990, apparently he was imprisoned for most, if not all, of that period.  Dixon was also the father of two American citizen children at the time of his deportation (his third child had not yet been born), but he has provided no information as to whether, like Boliero, he was the sole caretaker, or even a caretaker at all, of those children. Id. Defendant has provided no evidence that he maintained steady employment and, unlike Boliero, he did not assist the government as a confidential informant. Id.  Accordingly, defendant has not made the showing required for the Court to find that he would have been reasonably likely to succeed on an appeal of his deportation.

    Finally, defendant has failed to show that he was prejudiced by his attorney's failure to notify him of his right to appeal.  As explained above, not only did defendant receive

notice of his right to appeal from the Immigration Judge at the deportation hearing, he has also failed to show that he had a reasonable likelihood of success had he filed an appeal. Accordingly, defendant has not met his burden of proof under 8 U.S.C. § 1326(d)(2) and (3).  The motion to dismiss will be denied.

**ORDER**

For the foregoing reasons, defendant's motion to dismiss the indictment (Docket No. 38) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated July 14, 2016